298 F.3d 1022
 Joseph R. RAMIREZ; Julia L. Ramirez; Joshua Ramirez; Regina Ramirez, Plaintiffs-Appellants,
v.
BUTTE-SILVER BOW COUNTY; John McPherson, Sheriff of Butte-Silver Bow County; Joe Lee, Undersheriff of Butte-Silver Bow County; John Does 1-50, in their individual and/or official capacities, Defendants, and
Jeff Groh, Special Agent with The Bureau of Alcohol, Tobacco, and Firearms, Defendant-Appellee.
Joseph R. Ramirez; Julia L. Ramirez; Joshua Ramirez; Regina Ramirez, Plaintiffs-Appellants,
v.
Butte-Silver Bow County; John McPherson, Sheriff of Butte-Silver Bow County; Joe Lee, Undersheriff of Butte-Silver Bow County; Jeff Groh, Special Agent with The Bureau of Alcohol, Tobacco, and Firearms; John Does 1-50, in their individual and/or official capacities, Defendants-Appellees.
 No. 99-36138.
 No. 00-35955.
 United States Court of Appeals, Ninth Circuit.
 Argued September 10, 2001.
 Submission Deferred September 10, 2001.
 Submitted and Filed March 13, 2002.
 Amended July 25, 2002.
 
 Vincent J. Kozakiewicz, Boise, ID, and W.G. Gilbert III, Dillon, MT, argued the cause for the appellants.
 William W. Mercer, Assistant United States Attorney, Billings, MT, and Brendon J. Rohan, of Poore, Roth & Robinson, P.C., Butte, MT, argued the cause for the appellees. Deanne L. Sandholm, Assistant U.S. Attorney, Helena, MT, assisted on the brief.
 Appeals from the United States District Court for the District of Montana; Donald W. Molloy, District Judge, Presiding. D.C. No. CV-99-00017-DWM.
 Before: KOZINSKI and GOULD, Circuit Judges, and SCHWARZER, District Judge.*
 ORDER
 The Opinion filed March 13, 2002, is amended as follows: 1. At page 4170, [283 F.3d 985, 988] line 9 of the slip opinion, replace "Id." with "Id. (quoting United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir.1982) (internal quotation marks omitted)).".
 2. At page 4171, [283 F.3d at 989] footnote 1, line 8 of the slip opinion, replace "quoting" with "citing".
 3. At page 4174, [283 F.3d at 991] lines 11-12 of the slip opinion, replace "qualified immunity because, according" with "qualified immunity. According".
 With these amendments, the petition for rehearing is denied and the petition for rehearing en banc is rejected. Fed. R.App. P. 35, 40.
 OPINION
 KOZINSKI, Circuit Judge.
 
 
 1
 We consider whether and under what circumstances law enforcement officers who execute a search pursuant to a defective warrant enjoy qualified immunity.
 
 
 2
 * Agent Jeff Groh of the Bureau of Alcohol, Tobacco and Firearms ("BATF") received two reports that the Ramirezes kept an automatic rifle, a rocket launcher, a grenade launcher and grenades on their ranch in western Montana. Groh prepared an application for a search warrant and supporting affidavit, and presented them to a magistrate judge who issued the warrant. The application properly described both the place to be searched and the objects sought. However, the warrant itself omitted the latter information entirely: In the space provided to list the items to be seized, Groh mistakenly typed a description of the Ramirez home.
 
 
 3
 Groh led BATF agents and members of the county sheriff's department, including Sheriff John McPherson and Undersheriff Joe Lee, in the execution of the warrant. When the officers entered the Ramirez home, only Mrs. Ramirez was present. Groh told her they had a search warrant and were there "because somebody called and said you have an explosive device in a box." The officers found no illegal weapons or explosives, but photographed the home's interior and recorded the serial numbers of the Ramirezes' legal firearms. Mrs. Ramirez tried to call her attorney during the search but could not reach him. As Groh left, he gave Mrs. Ramirez a copy of the defective search warrant; neither the application nor the affidavit were attached. Nothing was seized, and no charges were subsequently filed against the Ramirezes.
 
 
 4
 The next day, Mrs. Ramirez reached her attorney and faxed him the warrant. The attorney then called Groh and questioned the warrant's validity because of the omitted information. He also demanded a copy of the warrant application and supporting affidavit. Groh replied that the documents were under court seal, but faxed him the page of the application that contained the list of items to be seized.
 
 
 5
 The Ramirezes sued the officers under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and 42 U.S.C. § 1983, for violation of their Fourth Amendment rights. The district court granted summary judgment to defendants, holding that there was no constitutional violation and defendants enjoyed qualified immunity in any case. The Ramirezes also brought two other Bivens and section 1983 claims, see Parts III & IV infra, but the district court ruled against them on those as well. The Ramirezes appeal.
 
 II
 
 6
 A. Was there a Fourth Amendment violation?
 
 
 7
 To satisfy the Fourth Amendment, a search warrant must describe with particularity the place to be searched and the items to be seized. U.S. Const. amend. IV; United States v. Sayakhom, 186 F.3d 928, 934 (9th Cir.1999). The particularity requirement protects the individual from a "general, exploratory rummaging in [his] belongings." United States v. Lacy, 119 F.3d 742, 746 n. 7 (9th Cir.1997) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). It does so both by "limit[ing] the officer's discretion" and by "inform[ing] the person subject to the search what items the officers executing the warrant can seize." United States v. McGrew, 122 F.3d 847, 850 (9th Cir.1997) (emphasis removed).
 
 
 8
 We addressed the particularity requirement in McGrew, where federal agents searched the home of a suspected drug trafficker. The warrant itself did not specify the evidence sought. Rather, in the space provided for that information, it referred to the "attached affidavit which is incorporated herein." Id. at 848. However, agents never served McGrew with a copy of the affidavit, either during or after the search. Id. at 849.
 
 
 9
 According to the "well settled law of this circuit," a warrant "may be construed with reference to the affidavit ... if (1) the affidavit accompanies the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit." Id. (quoting United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir.1982) (internal quotation marks omitted)). When officers fail to attach the affidavit to a general warrant, the search is rendered illegal because the warrant neither limits their discretion nor gives the homeowner the required information. Id. at 850.
 
 
 10
 Appellees concede that the warrant here was facially defective because it provided no description of the evidence sought. It also didn't refer to or incorporate the application or affidavit. Groh attached no documents to the warrant when he served it on Mrs. Ramirez. Nonetheless, appellees argue that McGrew does not control and that the search was lawful because Groh's words remedied the defect. According to Groh, he spoke at length with the Ramirezes during the search — Mrs. Ramirez in person, Mr. Ramirez on the telephone — and listed all of the items sought. However, the Ramirezes claim that Groh spoke only to Mrs. Ramirez, and told her simply that the officers sought "an explosive device in a box."
 
 
 11
 This factual dispute is immaterial: Groh could not have cured the flaw because he lacked the authority to amend the warrant. As a law enforcement officer, Groh was empowered only to execute the warrant. Therefore, he could no more have supplemented it verbally than he could have amended it by crossing out the terms approved by the magistrate and scribbling new ones in the margins. The only way Groh could have remedied the defect in the warrant was to ask a magistrate to issue a corrected version. McGrew therefore controls and the warrant failed to comply with the Fourth Amendment.[1]
 
 
 12
 Our holding is consistent with the goals of the particularity requirement, which went unfulfilled here despite Groh's alleged oral statements. First, the absence of a sufficiently particular warrant increased the likelihood and degree of confrontation between the Ramirezes and the police. The presence of a comprehensive and valid warrant "greatly reduces the perception of unlawful or intrusive police conduct, by assuring the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotation marks omitted).
 
 
 13
 Second, the invalid warrant deprived the Ramirezes of the means to be on the lookout and to challenge officers who might have exceeded the limits imposed by the magistrate. "Citizens deserve the opportunity to calmly argue that agents are overstepping their authority or even targeting the wrong residence." United States v. Gantt, 194 F.3d 987, 991 (9th Cir.1999). Such a dialogue is impossible if citizens must rely on officers' verbal representations of the scope of their authority. To stand a real chance of policing the officers' conduct, individuals must be able to read and point to the language of a proper warrant.
 
 
 14
 Third, permitting officers to expand the scope of the warrant by oral statements would broaden the area of dispute between the parties in subsequent litigation. The parties' disagreement over exactly what Groh said during the search, and to whom he said it, is immaterial because the warrant must contain all authorizations and limitations in writing.
 
 
 15
 B. Are Defendants Protected by Qualified Immunity?
 
 
 16
 Law enforcement officers are entitled to qualified immunity if they act reasonably under the circumstances, even if the actions result in a constitutional violation.[2] Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); Marks v. Clarke, 102 F.3d 1012, 1026 (9th Cir.1996). What's reasonable for a particular officer depends on his role in the search. Because searches often "require[] cooperation and division of labor," Guerra v. Sutton, 783 F.2d 1371, 1375 (9th Cir.1986), officers' roles can vary widely. Typically, only one or a few officers plan and lead a search, but more — perhaps many more — help execute it. The officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions. A key aspect of this responsibility is making sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct. The leaders of the expedition may not simply assume that the warrant authorizes the search and seizure. Rather, they must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way. See United States v. Leon, 468 U.S. 897, 922-23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (search pursuant to a warrant is invalid if no reasonable officer could have believed the warrant was valid). The leaders of the search team must also make sure that a copy of the warrant is available to give to the person whose property is being searched at the commencement of the search,[3] and that such copy has no missing pages or other obvious defects.
 
 
 17
 Line officers, on the other hand, are required to do much less. They do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid. Guerra, 783 F.2d at 1375; Marks, 102 F.3d at 1029-30. So long as they "ma[k]e inquiry as to the nature and scope of [the] warrant," Guerra, 783 F.2d at 1375, their reliance on leaders' representations about it is reasonable. Id.; Marks, 102 F.3d at 1029-30. The line officers here acted reasonably: They were told that a warrant had been obtained and learned through an advance briefing what items could be seized. Guerra, 783 F.2d at 1375; Marks, 102 F.3d at 1030. Because they were not required to read the warrant, the line officers conducting this search cannot reasonably have been expected to know that it was defective.
 
 
 18
 The Ramirezes argue that none of the officers enjoy qualified immunity because, under McGrew, all of them — leaders and line officers alike — should have known that the defective warrant made the search illegal. McGrew, 122 F.3d at 850 n. 5. But McGrew said nothing about the different duties of leaders and line officers. We held only that "[i]t is the government's duty," not the duty of any particular officer, to serve a sufficiently particular warrant. Id. at 850 (emphasis added). Because we were reviewing the denial of a motion to suppress, we had no occasion to address the allocation of responsibilities between leaders and the rank and file.
 
 
 19
 The record identifies only Groh as the leader of the search. He received two reports of illegal weapons, obtained and served the warrant, conducted the pre-search briefing and supervised the search itself. However, he neglected to check the warrant for errors. The presence of errors in a warrant does not automatically deprive search leaders of immunity. The question is whether the defects are such that they would have been noticed by a reasonably careful officer who read the warrant before executing it. Cf. Arnsberg v. United States, 757 F.2d 971, 981 (9th Cir.1985) (holding that a search conducted pursuant to a facially flawed warrant did not violate the Fourth Amendment because "the discrepancy [was] not a serious one"). Even the most careful proofreaders let mistakes slip by, especially when checking their own work.
 
 
 20
 Nevertheless, Groh is not entitled to qualified immunity. According to his own affidavit, he did not read the warrant after the magistrate issued it and before he began the search. Had he done so, he would surely have realized that it did not contain a list of items to be seized and was therefore facially defective. He would then have been able to correct the error before going forward with the search. In most cases, "an officer cannot be expected to question the magistrate's... judgment that the form of the warrant is technically sufficient." Leon, 468 U.S. at 921. But "the officer's reliance on [that judgment] must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922-23 (citation omitted). No reasonable grounds exist here: The warrant was "so facially deficient ... in failing to particularize the place to be searched or the things to be seized" that, had Groh read it, he could not "reasonably [have] presume[d] it to be valid." Id. at 923.
 
 
 21
 It is possible that Groh shared authority over the search with other officers, such as Sheriff McPherson and Undersheriff Lee. However, nothing in the record indicates this was the case. Therefore, all officers except Groh are protected by qualified immunity.
 
 III
 
 22
 The Ramirezes also appeal the dismissal of their claim that the officers violated their right to privacy as protected by the Fifth and Ninth Amendments. This claim has two parts. First, the Ramirezes argue that the officers violated their right to privacy by notifying the media of the search immediately before it was executed. They claim that the resulting publicity damaged their standing in the community.
 
 
 23
 Although the Ramirezes present this claim as one for invasion of privacy, the circumstances of the search show that it is actually a defamation claim. Nothing in the record suggests that the media gained access to the Ramirez property. Whatever information the media obtained during the raid was gathered from the road adjacent to the ranch, where any member of the public could have observed the goings on. Cf. Hanlon v. Berger, 526 U.S. 808, 809-10, 119 S.Ct. 1706, 143 L.Ed.2d 978 (1999) (holding that police violated the Fourth Amendment by allowing a media crew to accompany them onto the premises and observe a search); Wilson, 526 U.S. at 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 ("[I]t is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant...."). Therefore, the only harm that the Ramirezes can show they have suffered is reputational injury, from which the Constitution offers no protection. Siegert v. Gilley, 500 U.S. 226, 233-34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).
 
 
 24
 The Ramirezes also argue that the search itself violated not only their right to be free from unreasonable searches and seizures, but also their right to privacy. "[C]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." Armendariz v. Penman, 75 F.3d 1311, 1320 (9th Cir.1996). However, the Supreme Court has held that plaintiffs cannot "double up" constitutional claims in this way: Where a claim can be analyzed under "an explicit textual source" of rights in the Constitution, a court may not also assess the claim under another, "more generalized," source. Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (analyzing claim under Fourth Amendment but not under substantive due process); see also Hufford v. McEnaney, 249 F.3d 1142, 1151 (9th Cir. 2001) (analyzing claim under First Amendment but not under substantive due process); Armendariz, 75 F.3d at 1319 (analyzing claim under Fourth and Fifth Amendments but not under substantive due process). Here, because the Fourth Amendment supplies an explicit textual source of constitutional protection against unlawful searches, that Amendment, and not the more general right to privacy, governs the constitutionality of the search.
 
 IV
 
 25
 Finally, the Ramirezes appeal the dismissal of their claim that each of the officers is liable as a bystander for failing to intercede and prevent his co-defendants' constitutional violations. See United States v. Koon, 34 F.3d 1416, 1424-25 (9th Cir.1994), rev'd on other grounds, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The district court dismissed this claim on the basis of its holding that no constitutional violation existed.
 
 
 26
 As to the line officers, this claim is foreclosed by our ruling that they had no duty to read the warrant and therefore could not have known that the warrant was defective. They cannot therefore reasonably be held liable for failing to intercede. As to Groh, it is clear from the record that he was not aware that the warrant was defective until long after the search was completed, when he spoke to the Ramirezes' attorney. Groh cannot be held liable for failing to stop a search he did not know was illegal.
 
 
 27
 AFFIRMED in part and REVERSED in part. No costs.
 
 
 
 Notes:
 
 
 *
 The Honorable William W Schwarzer, United States Senior District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Appellees also argue that, because their good faith reliance on the properly completed warrant application would make any seized evidence admissible,see United States v. Gantt, 194 F.3d 987, 1005-06 (9th Cir.1999) (discussing the good faith exception to the exclusionary rule), that good faith precludes a finding that the search violated the Fourth Amendment. McGrew forecloses this argument. We held there that if the affidavit "does not accompany the warrant, agents cannot claim good faith reliance on the affidavit's contents." 122 F.3d at 850 (citing United States v. Kow, 58 F.3d 423, 428-30 (9th Cir.1995)).
 
 
 [2]
 While the Ramirezes sued the federal officers underBivens and the county officers under section 1983, "the qualified immunity analysis is identical under either." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).
 
 
 [3]
 We note that in this case Agent Groh did not serve a copy of the warrant on Mrs. Ramirez until after the search was completed. Of course, this was much too lateSee Gantt, 194 F.3d at 1000-01.