**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

KRL; ROLAND WOMACK; NADINE
WOMACK; LARRY DWIGHT WOMACK;
LUKE WOMACK; RENEE WOMACK,
      *Plaintiffs-Appellees,*

v.

ESTATE OF RUSSELL MOORE; DAVID
J. IREY; TODD D. RIEBE; RON HALL;
AMADOR COUNTY; CALIFORNIA
STATE OF,

      *Defendants,*

and

ELLEN M. AQUARO, Successor in
Interest and Representative of the
Estate of Russell Moore,
      *Defendant-Appellant.*

No. 06-16282

D.C. No.
CV-99-02437-DFL

KRL; ROLAND WOMACK; NADINE
WOMACK; LARRY DWIGHT WOMACK;
LUKE WOMACK; RENEE WOMACK,
            *Plaintiffs-Appellees,*

            v.

ESTATE OF RUSSELL MOORE; ELLEN
M. AQUARO, Successor in Interest
and Representative of the Estate of
Russell Moore; TODD D. RIEBE;
RON HALL; AMADOR COUNTY;
CALIFORNIA STATE OF,
            *Defendants,*

            and

DAVID J. IREY,
            *Defendant-Appellant.*

No. 06-16284

D.C. No.
CV-99-02437-DFL

KRL; ROLAND WOMACK; NADINE
WOMACK; LARRY DWIGHT WOMACK;
LUKE WOMACK; RENEE WOMACK,
                 *Plaintiffs-Appellees,*

                  v.

ESTATE OF RUSSELL MOORE; ELLEN
M. AQUARO, Successor in Interest
and Representative of the Estate of
Russell Moore; DAVID J. IREY;
TODD D. RIEBE; AMADOR COUNTY;
CALIFORNIA STATE OF,
                       *Defendants,*

                and

RON HALL,
          *Defendant-Appellant.*

No. 06-16286

D.C. No.
CV-99-02437-DFL

OPINION

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

Submitted August 28, 2007*

Filed January 16, 2008

Before: Alfred T. Goodwin, A. Wallace Tashima, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Goodwin

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Stephen C. Pass, Deputy Attorney General, Sacramento, California, for defendant-appellant Aquaro; Douglas A. Haydel,

Haydel & Ornellas, Stockton, California, for defendant-appellant/cross-appellant Irey; Danielle R. Teeters, Johnson Schachter & Lewis, Sacramento, California, for defendant-appellant Hall.

Steven E. Moyer, Mold Davidson Fraioli Seror & Sestanovich, Los Angeles, California, for the plaintiffs-appellees/cross-appellants.

## OPINION

GOODWIN, Circuit Judge:

Defendants Russell Moore,[1] David Irey and Ron Hall appeal the district court's denial of summary judgment based on qualified immunity for their involvement in preparing, reviewing and executing two search warrants, one issued on January 11, 1999 and the other issued on January 13, 1999. Defendants contend that although the two warrants lacked probable cause, their conduct was reasonable. We hold that Moore, Irey and Hall are entitled to qualified immunity for the January 11 warrant, but that Hall is not entitled to qualified immunity for the January 13 warrant. For this reason, we affirm in part, reverse in part and remand for further proceedings.

## BACKGROUND

This case originates from a criminal investigation into the removal and disposal of an underground gasoline storage tank located on property purchased by KRL, a California general partnership. Participants in the criminal investigation included Moore, a California Highway Patrol Officer; Irey, a deputy district attorney for San Joaquin County who specializes in

---

[1] Russell Moore died in 2002. Ellen M. Aquaro has been substituted as Successor in Interest and Representative of the Estate of Russell Moore.

environmental prosecutions; and Hall, an investigator employed by the Amador County District Attorney's office. In December 1998, a grand jury indicted Robert Womack and others on twenty-one counts, many of which concerned the storage, transportation and disposal of the underground gasoline storage tank. In September 2000, the Amador County District Attorney's office transferred the criminal prosecution to the California Attorney General's office, which dropped all charges.

On December 10, 1999, KRL and members of the Womack family ("Plaintiffs") filed this 42 U.S.C. § 1983 action, claiming several constitutional violations. Before us on this appeal, eight years later, there remains just one alleged constitutional violation: a Fourth Amendment claim arising from the defendants' preparation, review and execution of search warrants issued on January 11, 1999 ("January 11 warrant") and January 13, 1999 ("January 13 warrant") for a KRL property and Womack's home address (the "Ridge Road Property").

Moore prepared the January 11 warrant and supporting affidavit. Hall, who had conducted at least fifty interviews to investigate charges against Womack, provided information for the affidavit. Both Hall and Irey read the affidavit and warrant, and confirmed the accuracy of the information.

Todd Riebe, a district attorney for Amador County, reviewed the January 11 warrant and affidavit on January 4, 1999. After consulting with Moore and Irey on questions related to the warrant and affidavit, Riebe gave his approval. Moore obtained a magistrate's approval on January 11, 1999.

In the supporting affidavit, Moore stated that, from the totality of the circumstances, he understood there to be "a pattern and practice on the part of the [sic] Robert WOMACK and the WOMACK controlled businesses, which shows malice towards many, if not most, laws." He said that the documents to be seized under the warrant would "help determine

the entire scope of [the KRL] business activities that are per-
meated with fraud."

The January 11 warrant, with Moore's supporting affidavit
incorporated by reference, authorized a search of the Ridge
Road Property and seizure of all:

> Partnership reports, paidouts, check books, registers,
> accounting paperwork, any and all insurance,
> memos, correspondence, or other documents relating
> to the control and operation of KRL Corporation
> and/or K.R.L. PARTNERSHIP, and articles of per-
> sonal property tending to establish and identify the
> identity of persons in control of the premises, and
> other containers that may house aforementioned
> records, video tapes and/or audio tapes since January
> 1, 1995 to the present.

The search pursuant to the January 11 warrant took place
early in the day on January 13, 1999. Moore conducted the
pre-search briefing, and both Moore and Hall participated in
the search. During the search, officers discovered a 1990 led-
ger for the KRL Partnership and several checks. Because
these documents exceeded the scope of the January 11 war-
rant, the officers stopped the search while Moore and Irey
went to court to seek a new warrant that would permit seizure
of the ledger, checks and other documents dating back to
1990. In an oral affidavit, Moore stated, "I believe that going
back to the 1990 ledger will show how . . . the funds from
KRL Partnership are being divided between the parties . . . ."
Moore also stated his belief that the bank account from which
the checks were written was "being used to divert funds from
KRL Partnership for the purposes of hiding the funds."

The magistrate approved the January 13 search warrant that
afternoon. The warrant authorized a search of the Ridge Road
Property and seizure of the same documents as those listed in
the January 11 warrant. The January 13 warrant, however,

changed the temporal scope of the documents to be seized from "January 1, 1995 to the present" to "January 1, 1990 to December 31, 1994." Both the oral affidavit and Moore's affidavit from the January 11 warrant were relied upon in their application to the magistrate for the January 13 warrant. The search pursuant to this warrant took place in the afternoon and evening of January 13, 1999.

These facts were before us in *KRL v. Moore*, 384 F.3d 1105 (9th Cir. 2004). In *KRL*, we concluded that defendants are entitled to absolute immunity to the extent that their conduct was prosecutorial rather than investigative. *Id.* at 1110-15. Absolute immunity is not at issue in this appeal. For defendants' investigative conduct, we applied the two-step test from *Saucier v. Katz*, 533 U.S. 194 (2001), to determine whether Riebe and Hall were entitled to qualified immunity. Under the first step, we affirmed the district court's conclusion that a constitutional violation occurred because the warrants lacked probable cause. *KRL*, 385 F.3d at 115-16. More specifically, we agreed that the January 11 and January 13 warrants lacked particularity as the warrants authorized a wide-ranging seizure of KRL documents. We acknowledged that " '[t]he uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.' " *Id.* at 1115 (quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984)). However, we noted that the Ninth Circuit has recognized an exception to the particularity requirement where probable cause exists "to believe that a business is permeated with fraud." *Id.* (citing *United States v. Offices Known as 50 State Distrib. Co.*, 708 F.2d 1371, 1374 (9th Cir. 1983)). Probable cause exists where " 'the entire business is merely a scheme to defraud or that all of the business's records are likely to evidence criminal activity.' " *Id.* (quoting *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995)). We agreed with the district court that, in this case, the supporting affidavits did not establish sufficient probable cause.

Under the second step, we disagreed with the district court and concluded that Riebe acted reasonably under the circumstances. But we agreed that Hall did not act reasonably. We said:

> Riebe approved the second search warrant on January 4, 1999, when it was limited to 1995. At that time, although the warrant still lacked probable cause, it had a more reasonable temporal limit; it alleged fraudulent activity and tax evasion dating to 1997; it alleged hazardous waste violations in 1995 and 1996 at the Bosse Road Property, as well as with the storage tank; and it alleged that Womack withdrew funds from KRL for personal expenses and illegal activities. We conclude that the warrant, as it stood on January 4, was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Riebe's approval of the second search warrant was reasonable, and, to the extent it was investigative rather than prosecutorial, he is entitled to qualified immunity.

> The district court properly denied qualified immunity to Hall on Plaintiffs' claim that he unreasonably relied on the search warrant and that he seized documents predating 1990 during the January 13 search. Assuming he was the lead investigator, Hall would have greater responsibility for ensuring that the warrant was not defective. Even if probable cause existed to believe KRL was "permeated with fraud" since 1995, no reasonable officer could conclude that the discovery of a 1990 ledger and several checks showed that KRL had been primarily engaged in fraudulent activity since 1990. The fact that a judge and a prosecutor had approved the warrant does not make Hall's reliance on it reasonable.

*Id.* at 1116-17 (citations omitted).

On remand, Moore, Irey and Hall moved for summary judgment on qualified immunity grounds. On March 2, 2006, the district court denied summary judgment for defendants' involvement with the January 11 warrant. First, the court found that Moore was a lead investigator, and thus had a greater responsibility for ensuring that the January 11 warrant was not defective under *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir. 2002). Second, the court found a disputed issue of material fact as to whether Irey and Hall were lead investigators, precluding summary judgment on the January 11 warrant claims. The district court also denied summary judgment for defendants' involvement with the January 13 warrant, relying on our conclusion that no reasonable officer could have believed that probable cause existed for a search of documents going back to 1990. On June 26, 2006, the district court denied defendants' motion for reconsideration.

This appeal of the district court's order and denial of reconsideration followed.

## JURISDICTION AND STANDARD OF REVIEW

Although a denial of summary judgment is ordinarily not an appealable interlocutory order, we have jurisdiction in this case because the motion for summary judgment is based on qualified immunity. *Lee v. Gregory*, 363 F.3d 931, 932 (9th Cir. 2004). We review the district court's denial of summary judgment de novo. *Id.* Our jurisdiction is limited to questions of law, and does not extend to qualified immunity claims involving disputed issues of material fact. *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001). Where disputed facts exist, we assume that the version of the material facts asserted by Plaintiffs, as the non-moving party, is correct. *Id.*

## DISCUSSION

When a constitutional violation occurs, law enforcement officers nonetheless are entitled to qualified immunity if they

act reasonably under the circumstances. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The Supreme Court outlined a two-step qualified immunity analysis in *Saucier*. 533 U.S. at 201-02. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If yes, "the next, sequential step is to ask whether the right was clearly established." *Id.* "The relevant, dispositive inquiry" under this second step is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

We previously held that the January 11 and January 13 warrants lacked probable cause, violating Plaintiffs' Fourth Amendment rights. *See KRL*, 384 F.3d at 1115-16. Only the second step of the *Saucier* analysis is relevant here: whether Moore, Irey and Hall acted reasonably under the circumstances when they prepared, reviewed and executed the January 11 warrant, and whether Hall acted reasonably for performing the same actions with respect to the January 13 warrant.[2]

[1] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Lee*, 363 F.3d at 934 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court recognized that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause . . . ." *Id.* at 914. Inadequate probable cause for a warrant does not necessarily render an officer's reliance unreasonable because the existence of probable cause is often a difficult determination. *Ortiz v. Van Auken*, 887 F.2d 1366, 1370-71 (9th Cir. 1989). Rather, "the preference for warrants is most appropriately effectuated by according

---

[2]Moore and Irey do not appeal the district court's denial of qualified immunity for the January 13 warrant.

'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914.

When reasonable minds could differ as to the existence of probable cause, approval of a warrant by a government attorney and ratification by a neutral and detached magistrate usually establishes objectively reasonable reliance. *Ortiz*, 887 F.2d at 1369-70. Courts treat magistrates as more qualified than police officers to make determinations of probable cause. *See, e.g.*, *Malley*, 475 U.S. at 346 n.9. As a general matter, the Constitution does not require officers to "second-guess the legal assessments of trained lawyers." *Arnsberg v. United States*, 757 F.2d 971, 981 (9th Cir. 1985); *see also Leon*, 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.").

**[2]** Officers lose their shield of qualified immunity "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 344-45 (citing *Leon*, 468 U.S. at 923). In other words, an officer who prepares or executes a warrant lacking probable cause is entitled to qualified immunity unless "no officer of reasonable competence would have requested the warrant." *Id.* at 346 n.9. When a warrant is so bereft of probable cause that official reliance is unreasonable, the officer executing the warrant "cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Id.*

Our cases repeatedly emphasize this distinction between warrants with disputable probable cause and warrants so lacking in probable cause that no reasonable officer would view them as valid. *See, e.g.*, *Ortiz*, 887 F.2d at 1370-71. For example, in *Ortiz* we held that it was reasonable for an officer to rely on a search warrant that was not so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable. *Id.* at 1370. In that case, the officer "properly sought to have his belief that there was probable cause reviewed by the Tulare County District Attorney's office and then by a judge." *Id.* This was "sufficient to establish objectively reasonable behavior." *Id.* (quoting *United States v. Freitas*, 856 F.2d 1425, 1431 (9th Cir. 1988)).

By comparison, in *United States v. Kow*, 58 F.3d 423 (9th Cir. 1995), we held that "*no reasonable agent*" could rely on a warrant that encompassed "essentially all documents on the premises" absent "exceptional circumstances." *Id.* at 428-29 (emphasis added). In that case, approval by an attorney and a magistrate did not amount to exceptional circumstances justifying reasonable reliance by the officers, because the lack of probable cause was so obvious that any reasonable officer would conclude that the warrant was facially invalid. *Id.* Similarly, in *United States v. Stubbs*, 873 F.2d 210 (9th Cir. 1989), we analyzed a warrant that contained no reference to criminal activity, and merely described broad classes of documents. *Id.* at 212. We held that the warrant's facial invalidity was obvious enough to preclude reasonable reliance. *Id.*

**[3]** Even if a warrant is so lacking in probable cause that official reliance is unreasonable, not all officers executing the search are liable for the constitutional deficiency. For example, in *Ramirez*, we recognized that "officers' roles can vary widely" and "[w]hat's reasonable for a particular officer depends on his role in the search." 298 F.3d at 1027. Officers who plan and lead a search "must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way." *Id.* (citing *Leon*, 468 U.S. at 922-23). Line officers, however, "do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid." *Id.* at 1028 (citing *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986)). Thus, even if a warrant is so lacking in probable cause that official reliance is unreasonable, line officers who do not read the warrant are still entitled

to qualified immunity if they inquire as to the "nature and scope" of the warrant, and rely on representations made by their superiors. *See id.* at 1028.

With these principles in mind, we analyze defendants' conduct pursuant to the January 11 and January 13 warrants.

## A.  January 11 Warrant

Moore, Irey and Hall contend that the district court erred in denying them qualified immunity for their reliance on the January 11 warrant, which authorized a search of the Ridge Road Property for KRL documents "since January 1, 1995 to the present." Defendants argue that it was reasonable to believe that probable cause supported the warrant, given that our prior opinion concluded that the January 11 warrant was not so lacking in indicia of probable cause as to render official reliance unreasonable. We agree.

**[4]** We previously granted Riebe qualified immunity for his approval of the January 11 warrant because "it had a more reasonable temporal limit" (limiting the search to documents dating back to 1995), "it alleged fraudulent activity and tax evasion dating to 1997," "it alleged hazardous waste violations in 1995 and 1996," and "it alleged that Womack withdrew funds from KRL for personal expenses and illegal activities." *KRL*, 384 F.3d at 1116. In contrast to the warrants in *Kow* and *Stubbs*, we concluded that the January 11 warrant was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* at 1116 (quoting *Malley*, 475 U.S. at 345). In doing so, we implicitly recognized that reasonable minds could disagree as to whether probable cause supported the January 11 warrant.

Although our prior decision granted Riebe qualified immunity, it denied qualified immunity for Hall. Unfortunately, the language in our opinion did not say whether Hall was denied qualified immunity for his reliance on *both* the January 11 and

January 13 warrants, or *only* the January 13 warrant. *See id.* at 1117. We now clarify that our prior opinion denied Hall qualified immunity only for his reliance on the January 13 warrant.

**[5]** Moore, Irey and Hall reasonably relied on the January 11 warrant because reasonable minds could have viewed the warrant as facially valid.[3] Under such circumstances, defendants "cannot be expected to question the magistrate's probable-cause determination," *Leon*, 468 U.S. at 921, nor are they required to "second-guess the legal assessments of trained lawyers." *Arnsberg*, 757 F.2d at 981. Faced with an assessment of probable cause upon which reasonable minds could disagree, defendants properly sought review by District Attorney Riebe and approval by a neutral and detached magistrate. *See Ortiz*, 887 F.2d at 1370. These acts are sufficient to establish objectively reasonable behavior. *See id.*

**[6]** We also reject Plaintiffs' argument that Moore, Irey and Hall, as lead investigators, held a greater responsibility than Riebe, who was minimally involved, for ensuring that the warrants were not defective. Interpreting the vague language in our prior opinion, the district court was led to assume that we had denied Hall qualified immunity for *both* the January 11 and January 13 warrants. Based on this assumption, it held that Riebe acted reasonably when he reviewed the January 11 warrant, but Hall acted unreasonably when he reviewed and relied on the same warrant. The district court reconciled this disparity by concluding that, under *Ramirez*, lead investiga-

---

[3]Plaintiffs allege that the January 11 warrant was revised several times between January 4, 1999, when Riebe approved it, and January 11, 1999. They argue that "reliance would not have been reasonable *after* January 4, 1999 when Hall, Irey and Moore revised and modified the affidavits in support of the warrants." This argument is foreclosed, however. In our prior opinion, we based our legal conclusion, that the warrant Riebe approved was not so lacking in indicia of probable cause as to render reliance unreasonable, on the final version of the January 11 warrant and affidavit that were submitted to the magistrate.

tors have a greater responsibility than reviewing attorneys to ensure that warrants are supported by probable cause. *See Ramirez*, 298 F.3d at 1027-28 ("The officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions. . . . Line officers, on the other hand, are required to do much less.").

**[7]** To alleviate any confusion caused by the admittedly ambiguous wording of our prior opinion, we stress that the liability of government attorneys reviewing a warrant for probable cause is not comparable to that of line officers executing a warrant under *Ramirez*. In *Ramirez*, we distinguished between lead and line officers in the context of the *execution* of a search warrant, when a few officers are typically in charge and other law enforcement personnel assist in defined roles. *See id.* The rule from *Ramirez*, however, should not be used to distinguish between officers and government attorneys when the sole issue is whether the supporting affidavit provides sufficient facts to show probable cause. A rule requiring officers to question reasonable assessments of probable cause by government attorneys and magistrates would "cause an undesirable delay in the execution of warrants" and "would also mean that lay officers must at their own risk second-guess the legal assessments of trained lawyers." *Arnsberg*, 757 F.2d at 981. Such a rule is not required by the Constitution, nor is it supported by a fair reading of *Ramirez*.

**[8]** Our prior opinion held that Riebe was entitled to qualified immunity but did not explicitly address Hall's liability under the January 11 warrant. We now hold that Moore, Irey and Hall are entitled to qualified immunity to the extent that they relied on the January 11 warrant, which was not so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

## B.  January 13 Warrant

Hall argues that the district court erred in denying his summary judgment motion on qualified immunity grounds for his

reliance on the January 13 warrant, which authorized a search for KRL documents "since January 1, 1990 to December 31, 1994." The district court held that Hall was not entitled to qualified immunity. We affirm the denial of qualified immunity for Hall's role in the search pursuant to the January 13 warrant.

**[9]** Our prior opinion analyzed Hall's qualified immunity for the January 13 warrant, and held that "*no reasonable officer* could conclude that the discovery of a 1990 ledger and several checks showed that KRL had been primarily engaged in fraudulent activity since 1990." *KRL*, 384 F.3d at 1117 (emphasis added). In other words, the January 13 warrant was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 344-45 (citing *Leon*, 468 U.S. at 923). Approval by an attorney and a magistrate did not justify reasonable reliance, because the lack of probable cause was so obvious that any reasonable officer reading the warrant would conclude that the warrant was facially invalid. *See Kow*, 58 F.3d at 428-29.

Despite the January 13 warrant's obvious lack of probable cause, Hall argues that he reasonably relied on the warrant as a "line officer" during the actual search. *See Ramirez*, 298 F.3d at 1028 (noting that line officers "may accept the word of their superiors that they have a warrant and that it is valid"); *see also KRL*, 384 F.3d at 1117 ("Assuming he was the lead investigator, Hall would have greater responsibility for ensuring that the warrant was not defective."). We reject Hall's argument, as well as his wishful reading of *Ramirez*.

When analyzing qualified immunity, our underlying inquiry is the *reasonableness* of the officer's conduct. *See Saucier*, 533 U.S. at 202. We recognized in *Ramirez* that "officers' roles can vary widely" during a search. 298 F.3d at 1027. The distinction between lead and line officers lends itself well to cases with facts similar to *Ramirez*, in which some officers plan and direct the search, and other officers

merely assist in its execution. *See id.* at 1027-28. However, the "lead officer" and "line officer" designations should not be treated as inflexible categories, nor should they obscure our underlying inquiry into the reasonableness of an officer's conduct in a particular case.

**[10]** In this case, Hall's role in the January 13 search defies easy classification. On the one hand, Hall correctly points out that his involvement in the actual search was dissimilar to that of the search leader in *Ramirez*. Hall did not draft the affidavit and warrant; he did not appear before the magistrate; and there is no evidence that he conducted the pre-search briefing or supervised the search. *Cf. Ramirez*, 298 F.3d at 1028 (noting that the leader at the search "received two reports of illegal weapons, obtained and served the warrant, conducted the pre-search briefing and supervised the search itself"). On the other hand, it would be inaccurate to classify Hall as a line officer at the January 13 search. Hall's involvement in the criminal investigation was not confined to assisting as part of the search warrant entry team. Rather, the record shows that Hall played an integral role in the overall investigation. Before participating in the January 13 search, Hall conducted at least fifty interviews to investigate charges against Womack, he provided information to Moore for the affidavits, and he reviewed the January 11 warrant and affidavit. Although Hall's participation differed from that of the search leader in *Ramirez*, his activities with respect to the January 13 search place him on the "lead" side of the lead-line distinction. Moreover, both Moore and Irey considered him to be a lead investigator.

**[11]** Thus, when analyzing Hall's role pursuant to the January 13 warrant, it is most useful to ask the question posed in *Saucier*: "whether it would be clear to a reasonable officer [in Hall's position] that his conduct was unlawful in the situation he confronted." 533 U.S. at 202. Given his leadership role in the overall investigation, Hall acted unreasonably when he relied on the January 13 warrant without first ensuring that the

warrant was facially valid. As we previously concluded, any reasonable officer making such an inquiry would conclude that the discovery of a ledger and several checks predating the allegedly fraudulent activity by five years did not provide sufficient probable cause to search for documents dating back to 1990. *See KRL*, 384 F.3d at 1117.

We affirm the district court's denial of qualified immunity to Hall to the extent that he relied on the January 13 warrant, which was so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings. No costs to either party in this appeal.