**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RIOLORDO APPLING, an Individual,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>CITY OF LOS ANGELES, a local public entity; DETECTIVE SUE BRANDSTETTER; DETECTIVE THOMAS SMALL, in his official capacity; DETECTIVE TIMO ILLIG,<br><br>Defendants-Appellees. | No.   15-55732<br><br>D.C. No.<br>2:13-cv-08891-JAK-AJW<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted March 8, 2017
Pasadena, California

Before:  PREGERSON, PAEZ, and CHRISTEN, Circuit Judges.

This is a civil rights case brought by Riolordo Appling ("Appling") under 42

U.S.C. §§ 1983 and 1985 against the City of Los Angeles and individual Los

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Angeles Police Department (LAPD) detectives. Appling's civil rights claims arise out of his arrest, conviction, and incarceration for a crime he argues he did not commit. The district court granted summary judgment in favor of the defendants. Appling timely appealed.

Shortly after midnight on June 1, 2009, a fight broke out in the parking lot of a Hollywood nightclub. The fight ended when the primary instigator (the "male suspect") and his female companion fled the scene in a white BMW. As the male suspect sped out of the parking lot, he ran over Michael Weaver, who had been punched unconscious during the melee. Mr. Weaver sustained serious injuries, but survived.

Responding LAPD detectives interviewed witnesses who described the BMW, the male suspect, and his female companion. The detectives quickly identified the woman, as she was a regular patron of the nightclub. After nearly a year of unsuccessful attempts to contact her, the woman finally called the detectives back. Although she was largely uncooperative, the woman told the detectives she had a friend named Riolordo Appling who was a young African American man, like the male suspect. The detectives ran Appling's name through a database and learned that he received a traffic ticket four months after the incident while driving a white BMW. The detectives compiled a six-pack photo

2

spread with Appling's photograph and showed it to the seven witnesses they had previously interviewed. Only one witness made a positive, unqualified identification of Appling.

The detectives then presented the case to the Los Angeles County District Attorney's Office. Prosecutors charged Appling with assault, felony hit and run, and felony battery. The detectives obtained an arrest warrant and arrested Appling. Appling pled not guilty. A jury convicted him on all counts.

After his conviction, Appling hired a new attorney who requested further forensic examination of the BMW Appling drove. The examination established that the BMW Appling drove still had all of its factory windows. This was significant because the driver's side window of the BMW used in the crime had been shattered in the course of the melee. Based on this evidence, it became clear that the BMW Appling drove was not the same car used to commit the crime. As a result, the trial judge granted Appling a new trial. The prosecutor did not refile charges and the trial judge dismissed the case. Appling was incarcerated for 11 months.

After Appling was released, he filed this civil rights action against the City of Los Angeles and three LAPD detectives, alleging various civil rights claims under 42 U.S.C. §§ 1983 and 1985. The district court granted the defendants'

motion for summary judgment and Appling timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and we affirm in part, reverse in part, and remand for a trial.

"A grant of summary judgment is reviewed de novo. Likewise, a grant of summary judgment on the ground of qualified immunity is also reviewed de novo." *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007) (citations omitted). Appling alleges seven claims under 42 U.S.C. § 1983 and one claim under 42 U.S.C. § 1985.[1] We address each in turn.

First, Appling argues that he was falsely arrested because the arrest warrant application was facially invalid. Under 42 U.S.C. § 1983, a plaintiff may establish a false arrest claim by showing "that a warrant lacked probable cause on its face." *Chism v. Washington State*, 661 F.3d 380, 386 n.9 (9th Cir. 2011). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "[A]n affidavit supporting the warrant, or the complaint itself, 'must recite competent facts that would lead a

---

[1] Appling abandoned an additional claim under § 1985(2) for conspiracy to obstruct justice by failing to address it in his briefing. *See, e.g.*, *Weston v. Lockheed Missiles & Space Co.*, 881 F.2d 814, 816 (9th Cir. 1989).

4

man of ordinary caution and prudence conscientiously to entertain a strong suspicion of the guilt of the accused.'" *In re Walters*, 543 P.2d 607, 614 (Cal. 1975) (en banc) (quoting *People v. Cressey*, 471 P.2d 19, 24 (Cal. 1970)). Officers are entitled to qualified immunity unless the "lack of probable cause was so obvious that any reasonable officer would conclude that the warrant was facially invalid." *KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008). For the reasons discussed below, we reverse the district court's order granting summary judgment and qualified immunity in favor of the defendants as to this claim.

Other than the felony complaint, the record does not reflect what documents comprised the warrant application. The felony complaint contained few facts and the record does not include a warrant affidavit. Even if the detectives included every available fact in the warrant application, there was minimal evidence supporting Appling's arrest: witnesses gave vague and conflicting descriptions of the male suspect, the BMW's license plate number is disputed, and the circumstances of the crime (it was dark and many witnesses were intoxicated), plus the 11-month delay between the crime and the six-pack photo spread, render witnesses' identifications of Appling unreliable. *See Manson v. Braithwaite*, 432 U.S. 98, 116 (1977); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1209 (9th Cir. 2008); *Grant v. City of Long Beach*, 315 F.3d 1081, 1088 (9th Cir. 2002), *opinion*

*amended on denial of reh'g*, 334 F.3d 795 (9th Cir. 2003). Viewing this evidence in the light most favorable to Appling, the nonmoving party, we conclude that triable issues of material fact exist as to whether the "lack of probable cause was so obvious that any reasonable officer reading the warrant would conclude that the warrant was facially invalid." *KRL*, 512 F.3d at 1192.

Second, Appling argues that the defendants falsely arrested him because they engaged in judicial deception. To survive summary judgment on a judicial deception claim, a plaintiff "must make (1) a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (internal quotation marks omitted). "[I]f an officer submitted an affidavit that contained statements he knew to be false or would have known to be false had he not recklessly disregarded the truth . . . the shield of qualified immunity is lost." *Id.* (citing *Hervey v. Estes*, 65 F.3d 784, 788–89 (9th Cir. 1995)). For the following reasons, we reverse the district court's order granting summary judgment and qualified immunity in favor of the defendants as to this claim.

The defendants' "pre-arrest warrant" reports (which the defendants allegedly submitted to the judge issuing the arrest warrant) state that the BMW involved in

6

the crime "was determined to have been driven by a Riolordo Appling."  But whether Appling drove the BMW was exactly what had *not* been determined. Because the record reflects uncertainty as to whether the BMW Appling drove had a different license plate number than the BMW used in the crime, the aforementioned statement constitutes at least a reckless disregard for the truth.  The defendants also failed to emphasize that only one witness was certain about his identification of Appling from the photo spread.  Viewing this evidence in the light most favorable to Appling, the nonmoving party, we conclude that triable issues of material fact exist as to whether the defendants recklessly disregarded the truth and whether "but for the dishonesty" the judge would have issued the arrest warrant. *See Elle*, 281 F.3d at 1024.

Third, Appling alleges a malicious prosecution claim.  A malicious prosecution claim requires a showing "that the defendants prosecuted [the plaintiff] with malice and without probable cause, and that they did so for the purpose of denying [him] a specific constitutional right." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (internal quotation marks omitted).  Appling does not raise a genuine issue of material fact regarding whether the defendants acted maliciously.

Fourth, Appling contends that the defendants deliberately fabricated evidence in violation of *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir.

7

2001). Although witnesses provided varied descriptions of the male suspect, the defendants did not fabricate witnesses' statements. There is no evidence that the defendants pressured witnesses, nor that they knew that the BMW Appling drove could not have been the car used to perpetrate the crime.

Fifth, Appling claims that the defendants withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Appling claims that the defendants hid evidence that the BMW Appling drove was not the vehicle used in the crime. This claim is unsupported. Appling also argues that the defendants concealed that one witness had an adverse incentive against Appling, but Appling was already aware of this because that witness had filed a civil lawsuit against him. *See Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (finding no *Brady* violation where "Petitioner possessed the salient facts regarding the existence of the records that he claims were withheld"). Finally, Appling argues that the defendants did not give one of their investigative files to the prosecutors, but the file in question did not exist until after Appling's criminal trial.

Sixth, Appling alleges an equal protection claim. "To succeed on a § 1983 equal protection claim, the plaintiff[] must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000). Appling argues

8

that "there were different and unconstitutional standards afforded to him because he is a black American." This assertion is insufficient to overcome summary judgment. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("[C]onclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment.").

Seventh, Appling alleges a municipal liability claim against the City of Los Angeles. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). However, Appling does not provide evidence of a deficient LAPD policy or custom sufficient to support his *Monell* claim.

Finally, Appling alleges a claim under 42 U.S.C. § 1985(3). To establish a § 1985(3) claim, a plaintiff must, among other things, establish "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). For the reasons previously outlined, Appling has not met this burden.

***

In sum, we affirm the district court's grant of summary judgment in favor of the defendants as to Appling's malicious prosecution, *Devereaux*, *Brady*, equal protection, *Monell*, and § 1985(3) claims. We reverse the district court's grant of

9

summary judgment in favor of the defendants as to Appling's false arrest claims, *i.e.* that the warrant application was facially invalid and that the defendants engaged in judicial deception.  Accordingly, we remand for a trial.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

**The parties shall bear their own costs on appeal.**