**Ben ORTIZ, Plaintiff–Appellee,**

v.

**Robert C. VAN AUKEN, Defendant,**

**and**

**Wayne C. Spencer,
Defendant–Appellant.**

No. 88–2815.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1989.

Decided Oct. 27, 1989.

James P. Hurlbutt, Hurlbutt, Clevenger, Long & Vortmann, Visalia, Cal., for defendant-appellant.

I. Singh Aulakh, Visalia, Cal., for plaintiff-appellee.

Before WALLACE and NOONAN, Circuit Judges, and LEW,* District Judge.

WALLACE, Circuit Judge:

Police Sergeant Spencer appeals from the district court's denial of his motion for summary judgment on the basis of qualified immunity. Ortiz sued Spencer and others under 42 U.S.C. § 1983 alleging that the police illegally searched his home on the basis of a search warrant unsupported by probable cause. Spencer contends that even if the search was illegal, his conduct in consulting and securing the approval of a deputy district attorney as well as a neutral detached magistrate was objectively reasonable, and thus he is entitled to qualified immunity. We have jurisdiction of this interlocutory appeal pursuant to 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). We reverse the denial of summary judgment and remand for dismissal.

**I**

Spencer is a sergeant in the Burglary and Narcotics Division of the Visalia, California, police department. On July 16, 1985, he received a telephone call at the Visalia Police Department from a man whose voice had no distinguishing accent. Vadnais, another officer, listened to part of the call. The caller did not identify himself, although Spencer insisted he do so. He told Spencer that nine days ago, he had personally observed cocaine, AR 16 rifles, hand grenades, machine guns, Uzi-brand weapons, and high explosives at 412 North Demaree, Visalia. The caller stated he believed that this material was still at the address at which he had seen it but that it would be moved within 24 hours to an unknown location.

Fifteen minutes later, Spencer received a telephone call from Captain Garay of the Visalia office of the California Highway Patrol, reporting that he had received a similar anonymous telephone call. About that time, officer Rodriguez of the Visalia Police Department was advised by telephone that the Fresno Police Department received a similar call. Spencer discussed the call with Vadnais, who was experienced with high explosives. Vadnais and Spencer considered and rejected the idea of simply calling Ortiz who they had determined was the occupant of 412 North Demaree. They concluded that Ortiz would likely deny having the explosives and try to move them hurriedly. Vadnais expressed great concern about explosives being located in a residential area and the danger that would be created by moving them. Spencer and Vadnais learned that Ortiz was a former Los Angeles law enforcement officer and presently a private investigator. They concluded that he would probably detect any surveillance and might then hurriedly move the explosives with attendant risk. Vadnais advised Spencer to call the federal office in Fresno and then to consult Witt. Spencer called Special Agent Dunkel of the Fresno Office of the Federal Bureau of Alcohol, Tobacco, and Firearms. Dunkel, too, had just received a similar call. Spencer concluded that the same anonymous person had made all four calls.

Spencer then consulted Witt, a deputy district attorney in the Tulare County District Attorney's office. Spencer described the various telephone calls and advised Witt that the house was located in a residential neighborhood. Spencer and Witt arranged to meet later, allowing time for Witt to conduct the necessary legal research to determine whether probable cause existed. Meanwhile, Spencer drove by the house to confirm its location. When Spencer and Witt met later, Witt advised Spencer that probable cause did exist. The two then prepared a document entitled "Statement of Probable Cause," and a

* Honorable Ronald S.W. Lew, United States District Judge, Central District of California, sitting by designation.

form "Affidavit for Search Warrant." The affidavit recited facts that Spencer believed to be true: that at 412 North Demaree, Visalia, there were cocaine, high explosives, hand grenades, a machine gun, Uzis, and military issue AR 16 rifles, which had been stolen or embezzled, had been used to commit a felony, were possessed by a person intending to use them to commit a public offense, or possessed by another to whom they had been delivered to be concealed, or constituted evidence tending to show that a felony had been committed or that a particular person had committed a felony.

Witt's declaration, filed in the district court, states that Spencer consulted him as to whether the facts provided probable cause. After performing "research and analysis," Witt advised Spencer that probable cause existed to search the residence. Witt confirms that he reviewed Spencer's affidavit and Statement of Probable Cause before Spencer went to the judge to obtain the warrant.

According to Judge Van Auken's declaration, Spencer arrived at his residence on July 16, 1985, with an "unsigned search warrant, an affidavit for the search warrant and a statement of probable cause." Judge Van Auken had at the time 13 years' legal experience predominantly in criminal law, including five years as a municipal court judge with 90% of his docket devoted to criminal matters. The judge "carefully reviewed and analyzed those documents," concluded probable cause existed, and issued the warrant.

The search was then conducted. According to Vadnais's declaration, Spencer and Vadnais found two semiautomatic machine guns, three inactive hand grenades, several rifles and hand guns, and some ammunition. None of the items were illegally possessed.

In due course this suit followed.

## II

We review independently the district court's denial of a motion for summary judgment based on qualified immunity. *Todd v. United States*, 849 F.2d 365, 368

(9th Cir.1988). Spencer is entitled to qualified immunity if his search did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (*Harlow*). The district court found that under clearly established law, probable cause did not exist to support the search warrant, and thus Spencer's search violated Ortiz's clearly established fourth amendment rights. We assume without deciding that Spencer's conduct violated a clearly established right, and turn to the second prong of the *Harlow* test: whether a reasonable officer in Spencer's position would have believed that his conduct was constitutional. *See Vaughan v. Ricketts*, 859 F.2d 736, 739 (9th Cir.1988), *citing Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3036, 97 L.Ed.2d 523 (1987). We evaluate whether a reasonable police officer would have known that his actions were unlawful under the same standard of "objective reasonableness" that would apply in a suppression hearing. *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986).

Spencer suggests that this case is controlled by *United States v. Freitas*, 856 F.2d 1425 (9th Cir.1988) (*Freitas*). In *Freitas*, the magistrate who issued the warrant used a conventional warrant form but crossed out the language requiring both a description of the items subject to seizure and that copies of the warrant and an inventory of property taken in the search be left with the owner. Because the warrant was defective, the search was illegal. *Id.* at 1428. We nevertheless concluded that it was objectively reasonable for the agents to rely on the illegal "covert entry" warrant. The agents consulted an Assistant United States Attorney who informed them that he would research the legality of using such a warrant, and thereafter assisted the agent in drafting the warrant. The Assistant United States Attorney supplied the language describing the need for covert entry, and instructed the agent to type in language purporting to

excuse notice and to cross out the provision for leaving a copy of the warrant with the owner of the property. *Id.* at 1431. The agent then brought the completed warrant before a magistrate, and pointed to the changes she had made to the warrant form. After reading the warrant and supporting affidavit, the magistrate told the agent that although he had never before signed such a warrant, he knew he had authority to do so. *Id.*

*Freitas* held that the approval of the illegal provisions by the prosecutor and the ratification of the warrant by a neutral detached magistrate were sufficient to establish objectively reasonable behavior. *Id.* We likened the situation to that before the Supreme Court in *Massachusetts v. Sheppard*, 468 U.S. 981, 989–90, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737 (1984) (*Sheppard*), the companion case to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (*Leon*) (establishing the good faith exception to the exclusionary rule). There, too, an officer prepared an affidavit which was reviewed and approved by a district attorney, and presented to a judge, who decided that probable cause existed and issued a warrant. The officer asked the judge to change the warrant form because he had been unable to find a copy of the correct form, and the judge made the necessary changes. *Sheppard*, 468 U.S. at 985–86, 104 S.Ct. at 3426. The Court reasoned that the police conduct was objectively reasonable in that the police "took every step that could reasonably be expected of them." *Id.* at 989, 104 S.Ct. at 3428. The Supreme Court explained:

> An error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not police officers, who made the critical mistake. "[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Illinois v. Gates*, 462 U.S. 213, 263, 103 S.Ct. 2317, 2346, 76 L.Ed.2d 527 (1983) (White, J., concurring in judgment).

*Id.* at 990, 104 S.Ct. at 3429 (footnote omitted).

We therefore stated in *Freitas* that:

> Like the police detective in *Sheppard*, the agents involved in the instant case consulted and secured the approval of a government attorney. They then fully informed the magistrate of the contents of the warrant, including the controversial deletion of the notice provisions, and obtained his approval as well. These acts were sufficient to establish objectively reasonable behavior under *Sheppard*.

856 F.2d at 1431. Under *Sheppard*, after consulting both a government attorney and a neutral detached magistrate, "the agents were not required to disbelieve these experts." *Id.* at 1432.

We reached a similar result in *Arnsberg v. United States*, 757 F.2d 971 (9th Cir. 1985) (*Arnsberg*), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986), where the subject of an improper arrest warrant brought a *Bivens* claim against the agents who executed it. The plaintiff argued that the arresting officers acted unreasonably because they should have known that a material witness arrest warrant could not validly be issued against him. *Id.* at 981. The officers claimed qualified immunity because they had consulted an Assistant United States Attorney and secured a warrant from a federal magistrate. *Id.* at 975, 980–82. We rejected the argument that the officers should have known that the warrant was invalid. We stated,

> It would be plainly unreasonable to rule that the arresting officers ... must take issue with the considered judgment of an assistant United States Attorney and the federal magistrate. Not only would such a rule cause an undesirable delay in the execution of warrants, but it would also mean that lay officers must at their own risk second-guess the legal assessment of trained lawyers. The Constitution does not require that allocation of law enforcement duties.

*Id.* at 981.

Recently, in *United States v. Luk*, 859 F.2d 667 (9th Cir.1988) (*Luk*), while evalu-

ating whether a search was objectively reasonable under *Leon,* we found it relevant that the executing officers consulted an Assistant United States Attorney. *Luk* involved a search pursuant to a warrant defective for lack of particularity. Though the supporting affidavit was lengthy and particularized, the officers failed to comply with the Ninth Circuit requirement of incorporating the affidavit by reference in the warrant and attaching it. *See id.* at 676. An Assistant United States Attorney prepared the warrant and assisted the officers in drafting the affidavit. *Id.* at 677–78. We held that the warrant, construed with this affidavit, was not so facially overbroad as to preclude the officers' good faith reliance on its legality. *Id.* at 678. We found that the "reasonableness of the executing officers' reliance [was] buttressed by the expertise of [the] Assistant United States Attorney." *Id.*

■ Ortiz correctly points out that the "good faith" exception to the warrant requirement does not apply where the warrant is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, *quoting Brown v. Illinois,* 422 U.S. 590, 611, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring). This is not such a case. The specificity of the informant's information, the multiple telephone calls, and the fact that both Deputy District Attorney Witt and Judge Van Auken, each of whom had substantial legal training and experience, concluded that there was probable cause to issue a warrant combine to indicate that Spencer's belief was not "entirely unreasonable." The officer here properly sought to have his belief that there was probable cause reviewed by the Tulare County District Attorney's office and then by a judge. Thus, the officer took reasonable measures to confirm his preliminary legal conclusion. Under *Freitas,* these acts are "sufficient to establish objectively reasonable behavior." 856 F.2d at 1431.

■ *United States v. Stubbs,* 873 F.2d 210 (9th Cir.1989) (*Stubbs*), does not dic-

tate a different result. There we explained that "[t]he good faith exception is not available where 'the executing officer simply could not have reasonably relied on a facially deficient warrant.' " *Id.* at 212, *quoting United States of Michaelian,* 803 F.2d 1042, 1046 (9th Cir.1986). *Stubbs* and the cases on which it relies all involved facially overbroad warrants which failed to particularize the places to be searched or the items to be seized. *Id.* at 211–12. A warrant may be so facially overbroad that it precludes reasonable reliance. *Center Art Galleries–Hawaii, Inc. v. United States,* 875 F.2d 747, 752–54 (9th Cir.1989) (*Center Art Galleries* ); *Stubbs,* 873 F.2d at 212. A warrant overbroad to this extent provides officers no guidance as to the boundaries of the search which they must execute. Officers poised to conduct a search should be able to ascertain that such a warrant fails to offer sufficiently detailed instruction and instead leaves them guessing as to their task. Requiring that an officer know when a warrant is facially overbroad to this degree presents little burden. We have therefore been vigilant in scrutinizing officers' good faith reliance on such illegally overbroad warrants. *See Center Art Galleries,* 875 F.2d at 752–54; *Stubbs,* 873 F.2d at 212. Indeed, in *Center Art Galleries,* we held that although the officer submitted the warrant to the United States Attorney's office and received the approval of a magistrate, the warrant was so facially overbroad that it precluded reasonable reliance. 875 F.2d at 752–53. We explained that the officer was aware of the overbreadth problem and yet failed to bring it to the attention of the magistrate or receive his specific assurances. *Id.* at 753–54.

Unlike the warrants in *Center Art Galleries* and *Stubbs,* the warrant to search Ortiz's home was not facially overbroad. Rather, Ortiz complains that the warrant lacked probable cause—the very situation confronted by the Supreme Court in *Leon. Leon,* 468 U.S. at 921, 104 S.Ct. at 3419. In explaining the parameters of the good faith exception, *Leon* distinguished between warrants that are facially invalid for lack of particularity and those so lacking in

indicia of probable cause as to render an officer's belief in its existence "entirely unreasonable." *Id.* at 923. Determining whether certain facts constitute probable cause differs from ascertaining whether a warrant is so facially overbroad that it precludes reasonable reliance. *Leon* teaches that inadequate probable cause does not necessarily render a warrant facially invalid nor prevent reasonable belief in the existence of probable cause. The existence of probable cause may be difficult to determine. Recognizing this, *Leon* and its progeny encourage officers to consult legal officers and rely on their opinions. Once this is accomplished, " 'there is literally nothing more the policeman can do in seeking to comply with the law.' " *Id.* at 921, *quoting Stone v. Powell,* 428 U.S. 465, 498, 96 S.Ct. 3037, 3054, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring). *Leon* emphasizes that generally "an officer cannot be expected to question the magistrate's probable-cause determination." In contrast, officers attempting to execute a warrant so facially overbroad that it precludes reasonable reliance will recognize, even after the warrant leaves the hands of the magistrate, that it fails to offer guidance. *See Leon,* 468 U.S. at 923, 104 S.Ct. at 3420; *Center Art Galleries,* 875 F.2d at 753–54.

Spencer followed *Leon's* advice. Confronted with uncertainty, Spencer secured legal counsel from Witt, a deputy district attorney. He then went to a judge and obtained a warrant. As a general matter, we will not require officers to "second-guess the legal assessments of trained lawyers." *Arnsberg,* 757 F.2d at 981. Spencer's conduct was "sufficient to establish objectively reasonable behavior under *Sheppard.*" *Freitas,* 856 F.2d at 1431; *see also Luk,* 859 F.2d at 680. We thus find that it was objectively reasonable for Spencer to rely on the warrant. *Center Art Galleries* and *Stubbs* do not dictate a different result. Therefore, Spencer is entitled to qualified immunity as a defense to this action. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

We reverse the district court's denial of Spencer's motion for summary judgment based on qualified immunity, and remand for dismissal of the action.

REVERSED AND REMANDED FOR DISMISSAL.