# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AUGUSTA MILLENDER, BRENDA
MILLENDER, WILLIAM JOHNSON,
      *Plaintiffs-Appellees,*

v.

COUNTY OF LOS ANGELES, LOS
ANGELES COUNTY SHERIFF'S
DEPARTMENT, SHERIFF LEROY BACA,
SCOTT WALKER, RICK RECTOR,
DONALD NICHIPORUK, RICHARD
SCHLEGEL, DEPUTY BRICE STELLA,
JACK DEMELLO, DAVID O'SULLIVAN,
JAMES RITENOUR, IAN STADE,
ROBERT J. LAWRENCE AND CURT
MESSERSCHMIDT,
      *Defendants-Appellants.*

No. 07-55518

D.C. No.
CV-05-02298-DDP

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
October 21, 2008—Pasadena, California

Filed May 6, 2009

Before: Ferdinand F. Fernandez, Consuelo M. Callahan and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Callahan;
Concurrence by Judge Fernandez;
Dissent by Judge Ikuta

5261

---

**COUNSEL**

Eugene P. Ramirez (argued) and Julie M. Fleming of Manning & Marder, Kass, Ellrod, Ramirez, LLP, of Los Angeles, California for the defendants-appellants.

Olu K. Orange (argued), Robert Mann, and Donald W. Cook of Los Angeles, California for the plaintiffs-appellees.

---

**OPINION**

CALLAHAN, Circuit Judge:

This § 1983 action arises out of a nighttime search and seizure. In a comprehensive opinion, the district court granted qualified immunity to some defendants on some issues and denied it on others. This interlocutory appeal by the City of Los Angeles and two deputy sheriffs, Detective Messerschmidt and Sergeant Lawrence, challenges only two aspects of the district court's order: the denial of qualified immunity on the scope of the search warrant to cover (1) evidence of gang affiliation and (2) all firearms and firearms-related items. We reverse the district court's denial of qualified immunity because we conclude that the officers were entitled to immunity under the second prong of the test set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), as they reasonably relied on the approval of the warrant by a deputy district attorney and a judge.

# I

Ms. Kelly had an ongoing relationship with Mr. Bowen, but decided to break off the relationship and move out of the residence on W. 97th Street because of Bowen's violent temper and his physical assaults on her. She asked for a sheriff deputy to watch her while she gathered some property from the residence. Two deputies accompanied Kelly to the residence, but were then called away to respond to an emergency.

As soon as the deputies left, Bowen appeared and attacked Kelly. Kelly managed to escape from Bowen and ran to her car. Bowen then retrieved a black sawed-off shotgun with a pistol grip from the residence. He ran in front of Kelly's car, pointed the gun at Kelly and stated that he would kill her if she tried to leave. Kelly leaned over in her seat and pushed the gas pedal all the way down. Bowen jumped out of the way, fired a round at the car blowing out the front left tire, and chased the car firing another four rounds. Kelly was able to drive away and locate a police officer.

Detective Messerschmidt was assigned to investigate the assault. He reviewed Bowen's criminal history and determined that he had multiple felony and misdemeanor arrests. He met with Kelly and verified the facts of the incident with her. Kelly told him that she thought that Bowen might be staying at his foster mother's home on E. 120th Street. Kelly also stated that she had been to the foster mother's (Mrs. Millender's) home with Bowen.

Messerschmidt prepared an affidavit in support of a search warrant for the 120th Street residence. The affidavit states that Messerschmidt had 14 years' experience as a peace officer, was a "Gang Investigator," and had considerable training and experience as a gang detective. The affidavit recited Kelly's representations of the assault, noting that Bowen had fired a black sawed-off shotgun with a pistol grip. Messerschmidt stated that he had "conducted an extensive background search

on the suspect by utilizing departmental records, state computer records, and other police agency records," and that he had determined that Bowen resided at the 120th Street residence.

The affidavit further requested night service of the search warrant because the investigation had shown that Bowen "has gang ties to the Mona Park Crip gang" and because the nature of the crime — assault with a deadly weapon — "goes to show that night service would provide an added element of safety to the community as well as for the deputy personnel serving the warrant, based on the element of surprise."

The warrant allowed for the search and seizure of (1) articles of personal property tending to establish the identity of persons in control of the premises, (2) all firearms and firearm-related items,[1] and (3) articles of evidence showing, or relevant to, gang membership.[2] The search warrant was

---

[1]Specifically, the search warrant allowed the search and seizure of:

> All handguns, rifles or shotguns of any caliber, or any firearms capable of firing ammunition or firearms or devices modified or designed to allow it to fire ammunition. All caliber of ammunition, miscellaneous gun parts, gun cleaning kits, holsters which could hold or have held any caliber handgun being sought. Any receipts or paperwork, showing the purchase, ownership, or possession of the handguns being sought. Any firearm for which there is no proof of ownership. Any firearm capable of firing or chambered to fire any caliber ammunition.

[2]The search warrant also allowed the search and seizure of:

> Articles of evidence showing street gang membership or affiliation with any Street Gang to include but not limited to any reference to "Mona Park Crips," including writings or graffiti depicting gang membership, activity or identity. Articles of personal property tending to establish the identity of persons in control of the premise or premises. Any photographs or photograph albums depicting persons, vehicles, weapons or locations, which may appear relevant to gang membership, or which may depict the item being sought and or believed to be evidence in the case being investigated on this warrant, or which may depict evidence of criminal activity. Additionally to include any gang indicia that would establish the persons being sought in this warrant, affiliation or membership with the "Mona Park Crips" street gang.

reviewed by a sergeant, a police lieutenant, and a deputy district attorney, before it was presented to, and signed by, a judge.

The warrant was served at 5:00 a.m. on November 6, 2003. Within seconds of announcing their presence, the deputies broke into the front window and front door. Upon entering the house, the deputies encountered Mrs. Millender (who was in her seventies), her daughter and grandson. They followed the deputies' instructions and went outside pending the completion of the search.

The deputies did not find Bowen or the shotgun at the residence. The search did result in the seizure of Mrs. Millender's personal shotgun (Mossberg 12 gauge, black with a wood stock), a State of California Social Services letter addressed to Bowen, and a box of .45-caliber ammunition.[3]

Mrs. Millender, her daughter and grandson (sometimes referred to as plaintiffs) filed this action in the District Court for the Central District of California. The complaint named the County of Los Angeles, the sheriff's department, the sheriff, and a number of individual deputies as defendants. It contained several claims under 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendment and for conspiracy to deprive plaintiffs of their civil rights based on their race. The complaint also set forth supplemental state claims.

II

The parties filed cross-motions for summary judgment. The district court found that the warrant was facially valid, that Messerschmidt's conduct was reasonable, that there was prob-

---

[3]Bowen was arrested two weeks later. In the middle of the day, Messerschmidt knocked at the door of a motel room. He was admitted by Bowen's wife and found Bowen hiding under the bed.

able cause to believe Bowen was at the residence, and that the affidavit adequately supported nighttime service. These determinations are not in issue on appeal.

The district court then addressed the scope of the warrant. Three aspects of the warrant were challenged: (1) the seizure of all firearms and firearm-related items; (2) the seizure of articles of evidence showing, or relevant to, gang membership; and (3) the seizure of articles of personal property tending to establish the identity of persons in control of the premises.

The district court found that the warrant was overbroad in two respects:

> First, as to Plaintiffs' contentions regarding the search for firearms, it is undisputed that: (1) Bowen was accused of assaulting Kelly with a specifically-described sawed-off shotgun; (2) that Kelly gave Defendants a photograph of Bowen with the shotgun; and (3) that the affidavit did not mention any other weapons or crimes. Defendants argue that, even so, the warrant was reasonably specific, because "any caliber of shotgun or receipts would show possession of and/or purchase of guns." This argument is nonsensical and unpersuasive. The crime specified here was a physical assault with a very specific weapon. Therefore, defendants were not entitled to search for all firearms and the warrant was overbroad in this respect.

> Second, Plaintiffs argue that the authorization to seize gang-related information was overbroad, because, as Messerschmidt admitted, there is no evidence that the crime at issue was gang-related. In response, Defendants make the unsupported statement that "[t]he photos sought re gang membership could be linked with other gang members, evidenc-

ing criminal activity as gang affiliation is an enhancement to criminal charges." This argument is unconvincing. Plaintiffs are correct that California Penal Code § 186.22(b)(1) limits gang enhancements to cases where the underlying crime was gang-related . . . . Defendants do not point to any other basis for their argument or make any additional arguments. Therefore, this court finds that the warrant is overbroad in its authorization to seize gang-related items.

The district court rejected plaintiffs' challenge to the warrant's authorization to seize evidence concerning control of the premises. It held that the fact that defendants had a picture of Bowen with the shotgun did not prevent them from seeking additional ways of tying Bowen to the weapon. It noted that even if the defendants knew that Mrs. Millender owned the residence, Bowen could also have controlled the premises to the extent that he could have stored a weapon there.[4] In addition, the district court noted that although defendants contended that an overbroad warrant may be valid if the supporting affidavit provides more guidance, here the affidavit was no more specific than the warrant.

The district court did not specifically address the second prong of the *Saucier* test: that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (internal quotation marks and citation omitted). It only noted that defendants had "made no additional arguments as to why, even if the warrant was overbroad, the officers acted reasonably, without knowing that what they were doing was wrong."

---

[4]Plaintiffs do not challenge this decision in their appeal.

III

**[1]** We recently set forth our jurisdiction and the standard of review on an appeal such as this one in *KRL v. Estate of Moore*, 512 F.3d 1184 (9th Cir. 2008). We stated:

> Although a denial of summary judgment is ordinarily not an appealable interlocutory order, we have jurisdiction in this case because the motion for summary judgment is based on qualified immunity. *Lee v. Gregory*, 363 F.3d 931, 932 (9th Cir. 2004). We review the district court's denial of summary judgment de novo. *Id.* Our jurisdiction is limited to questions of law, and does not extend to qualified immunity claims involving disputed issues of material fact. *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001). Where disputed facts exist, we assume that the version of the material facts asserted by Plaintiffs, as the non-moving party, is correct. *Id.*

512 F.3d at 1188-89.

**[2]** As we noted in *KRL*, where a constitutional violation occurs, a police officer is entitled to qualified immunity if he acted reasonably under the circumstances. *KRL*, 512 F.3d at 1189. The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, outlined a two-step approach to qualified immunity. The first inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

In *KRL*, we further explained the impact of a magistrate's approval on officer's belief that a warrant is valid.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Lee,* 363 F.3d at 934 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 . . . (1986)). In *United States v. Leon,* 468 U.S. 897 . . . (1984), the Supreme Court recognized that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause . . . ." *Id.* at 914 . . . . Inadequate probable cause for a warrant does not necessarily render an officer's reliance unreasonable because the existence of probable cause is often a difficult determination. *Ortiz v. Van Auken,* 887 F.2d 1366, 1370-71 (9th Cir. 1989). Rather, "the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Leon,* 468 U.S. at 914 . . . .

When reasonable minds could differ as to the existence of probable cause, approval of a warrant by a government attorney and ratification by a neutral and detached magistrate usually establishes objectively reasonable reliance. *Ortiz,* 887 F.2d at 1369-70. Courts treat magistrates as more qualified than police officers to make determinations of probable cause. *See, e.g., Malley,* 475 U.S. at 346 n. 9 . . . . As a general matter, the Constitution does not require officers to "second-guess the legal assessments of trained lawyers." *Arnsberg v. United States,* 757 F.2d 971, 981 (9th Cir. 1985); *see also Leon*, 468 U.S. at 921 . . . ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.").

Officers lose their shield of qualified immunity "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official

belief in its existence unreasonable." *Malley,* 475 U.S. at 344-45 . . . (citing *Leon,* 468 U.S. at 923 . . .). In other words, an officer who prepares or executes a warrant lacking probable cause is entitled to qualified immunity unless "no officer of reasonable competence would have requested the warrant." *Id.* at 346 n. 9 . . . . When a warrant is so bereft of probable cause that official reliance is unreasonable, the officer executing the warrant "cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Id.*

512 F.3d at 1189-90.

## IV

**[3]** The district court, as required by the law in effect at the time, properly considered whether the warrant was overbroad with respect to firearms and evidence showing gang membership. On January 21, 2009, the Supreme Court in *Pearson v. Callahan*, 129 S. Ct. 808 (2009), held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. It further stated that "the judges of the district courts and the courts of appeals are in the best position to determine [what] order of decisionmaking will best facilitate the fair and efficient disposition of each case." *Id.* at 821. We need not review the district court's finding that the warrant was overbroad because we determine that even if it were overbroad, Messerschmidt and Lawrence are entitled to qualified immunity under the second prong of the *Saucier* test.

## V

**[4]** The record shows that Messerschmidt and Lawrence reasonably relied on the approval of the search warrant by a

deputy district attorney and a judge. Although they may not have stressed the argument in the district court, our review of the record shows that the deputies raised their reliance on the approval of the search warrant in their motion for summary judgment. Moreover, the record shows that the warrant was presented to and signed by a state court judge, and plaintiffs do not allege that there were any irregularities in the processing of the warrant. Accordingly, we consider the deputies' immunity under the second prong of the *Saucier* test, assuming the version of the material facts asserted by the plaintiffs. *KLR*, 512 F.3d at 1189.

[5] Messerschmidt's affidavit stated that Bowen had engaged in an assault with a deadly weapon, had ties with a gang, and probably had a criminal record.[5] Accordingly, an officer may reasonably have thought that the warrant could include the search for, and seizure of, firearms other than the sawed-off shotgun, as well as evidence relating to gang affiliation. The record, even read in a light most favorable to plaintiffs is not "so lacking in indicia of probable cause as to render an officer's belief in its existence 'entirely unreasonable.' " *Ortiz v. Van Auken*, 887 F.3d 1366, 1370-71 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984).

[6] The reasonableness of the officers' perspective is clear when this case is compared to the cases cited in *KLR*, in which officers were not entitled to rely on the approval of an attorney and a magistrate. *Id*. In *United States v. Kow,* 58 F.3d 423, 428 (9th Cir. 1995), the warrant "listed entire categories of documents to be seized, encompassing essentially all documents on the premises." In *United States v. Stubbs,* 873 F.2d

---

[5]Although the affidavit did not state that Bowen had a criminal record, the existence of such a record is a reasonable inference from the affidavit's statements concerning the nature of the crime and the weapon used, as well as its representation that Bowen "has gang ties to the Mona Park Crip gang based on information provided by the victim and the cal-gang data base."

210, 212 (9th Cir. 1989) the warrant "contained no reference to criminal activity, and merely described broad classes of documents." Although the warrant in this case may have been overbroad, it was limited to firearms and firearm-related items and evidence related to gang membership. The inclusion of these enumerated materials arose out of the officer's particular concerns with Bowen, if not with the specific crime under investigation. In any event, the deputies could reasonably have expected the deputy attorney general and the state judge to limit the warrant if it sought items for which there was no probable cause.

**[7]** In *KLR*, we reiterated the Supreme Court's perspectives that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," and that "the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *KLR*, 512 F.3d at 1189 (quoting *Leon*, 468 U.S. at 914). There is nothing in this record to support a departure from this approach. Accordingly, as the record shows that Messerschmidt and Lawrence could reasonably rely on the deputy district attorney and the judge to limit the scope of the warrant to items covered by the showing of probable cause, their reliance on the warrant as signed by the judge was reasonable and they are entitled to qualified immunity under the second prong of *Saucier*, 533 U.S. at 202. In other words, we do not think that here it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

## VI

In sum, accepting, but not ruling on, the district court's determination that the warrant was overbroad, *see Pearson*, 129 S. Ct. 808, we determine that on this record, even when viewed in a light most favorable to plaintiffs, the deputies could reasonably defer to the review of the warrant by a deputy district attorney and a judge. *See Leon*, 468 U.S. at 921;

*KRL*, 512 F.3d at 1189. Accordingly, Detective Messerschmidt and Sergeant Lawrence are entitled to qualified immunity for the overbreadth of the warrant under the second prong of the *Saucier* test. *See Saucier*, 533 U.S. at 202. The district court's denial of qualified immunity is **VACATED**, and the case is **REMANDED** with instructions to grant Detective Messerschmidt and Sergeant Lawrence qualified immunity on the challenged scope of the warrant.

---

FERNANDEZ, Circuit Judge, concurring:

I concur, but in light of the strong majority opinion and the strong dissent, I should explain further.

Although we need not decide the issue, I am satisfied that the warrant was overbroad and that the search, therefore, violated the constitutional rights of the Millenders. But, of course, the officers did not merely act on their own. They had a warrant. In seeking the warrant, they had asked a superior officer to review the affidavit and the proposed scope of the warrant. It was approved. It was then submitted to a deputy district attorney, who also approved it. Then, of course, it was submitted to a judge for his approval. He signed it with no apparent caveats or misgivings. In other words, in that sense, the officers did precisely what we want them to do. As we said over fifteen years ago in a slightly different context, where a judicially issued warrant was not involved:

> The appellants did not simply act rashly and without regard to [a person's] legal or constitutional rights. Rather, they did just what the courts encourage officials to do. They sought an expert legal opinion before they acted.
>
> We have previously had occasion to comment upon that kind of responsible behavior by police officials.

. . . .

> In fine, when the employees of LAPD were faced with what can only be called a complex and uncertain legal issue, they sought legal advice and then followed that advice. It would be counterproductive and even oppressive were we to find that they can now be held liable in damages for their actions. This is not to say that officials can ignore clear constitutional rules and hide behind the advice of an attorney.

*Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 888 (9th Cir. 1990) (citations omitted).

Not surprisingly, that approach has been applied when a warrant has been obtained. *KRL v. Estate of Moore*, 512 F.3d 1184, 1189-90 (9th Cir. 2008) (citations omitted). In other words, we are much inclined to protect officers when they seek the aid of the court before they act; that alone advances the purposes of the Fourth Amendment. *See Ortiz v. Van Auken*, 887 F.2d 1366, 1368-71 (9th Cir. 1989). In sum "[o]ur cases repeatedly emphasize [the] distinction between warrants with disputable probable cause and warrants so lacking in probable cause that no reasonable officer would view them as valid." *KRL*, 512 F.3d at 1190; *see also United States v. Stubbs*, 873 F.2d 210, 212 (9th Cir. 1989).

Here, as I see it, we are at the outer limits of our tolerance in that respect. When I read and reread the warrant and the affidavit that supports it, I come away with the feeling that there is extremely little support for the search of a third person's home for all firearms and ammunition. The weapon involved in the offense in question was identified with precision and the officers even had photographs of it. Similarly, although Bowen was, indeed, a bad man and a gang member, it is a little difficult to justify the search of a third person's home for gang membership information: gangs had nothing

whatsoever to do with the domestic assault that is in question here. Of course, I recognize, that the officers did not know that they were searching a third person's home; they thought they were searching Bowen's home also.

In short, courts are concerned about the burdens imposed upon police officers in this kind of situation and are constrained to feel empathy for their plight. On the other hand, courts are concerned about the plight of decent citizens like the Millenders when governmental authorities smash their way into a home on a quest for information regarding a person who, as it turns out, does not even reside in the home. Thus, in order to reify our concern for the officers we must embrace the protections thrown up around them in the warrant area with enthusiasm rather than with velleity. However, we must also protect the sanctity of the home[1] and assure that no representative of state power simply hides behind the misdeeds or misdirections of other representatives, lest we become a kakistocracy.[2] On this record, the former concerns prevail.

I, thus, concur in the majority opinion. I do so with deep regret that with respect to the warrant the legal system failed the Millenders, but we cannot visit the cost of that failure upon the heads of the officers.

IKUTA, Circuit Judge, dissenting:

Jerry Bowen is not a model citizen. He is allegedly a member of a street gang. He punched, bit, and then shot at his girlfriend when she understandably tried to leave him.

[1]*See Los Angeles Police Protective League*, 907 F.2d at 884.

[2]*See Grossman v. City of Portland*, 33 F.3d 1200, 1209-10 (9th Cir. 1994).

However, on October 10, 2003, Jerry Bowen's assault on Shelly Kelly was incontrovertibly not related to his gang activity. Moreover, Kelly had identified the weapon used in the crime: a black pump-gauge sawed-off shotgun with a pistol grip. Indeed, Kelly even gave the police a photograph of Bowen holding the shotgun.

Instead of seeking a warrant for the sawed-off shotgun, Officer Messerschmidt sought a warrant for:

> All handguns, rifles or shotguns of any caliber, or any firearms capable of firing ammunition or firearms or devices modified or designed to allow it to fire ammunition. All caliber of ammunition, miscellaneous gun parts, gun cleaning kits, holsters which could hold or have held any caliber handgun being sought. Any receipts or paperwork, showing the purchase, ownership, or possession of the handguns being sought. Any firearm for which there is no proof of ownership. Any firearm capable of firing or chambered to fire any caliber ammunition.

> Articles of evidence showing street gang membership or affiliation with any Street Gang to include but not limited to any reference to "Mona Park Crips," including writings or graffiti depicting gang membership, activity or identity. Articles of personal property tending to establish the identity of person in control of the premise or premises. Any photographs or photograph albums depicting persons, vehicles, weapons or locations, which may appear relevant to gang membership, or which may depict the item being sought and or believed to be evidence in the case being investigated on this warrant, or which may depict evidence of criminal activity. Additionally to include any gang indicia that would establish the persons being sought in this warrant, affiliation

or membership with the "Mona Park Crips" street gang.

Two statements in Messerschmidt's affidavit provided the sole grounds for this extraordinarily broad warrant: (1) Bowen was "a known Mona Park Crip gang member" and (2) Messerschmidt "believe[d] that the items sought will be in the possession of Jerry Ray Bowen and the recovery of the weapon could be invaluable in the successful prosecution of the suspect involved in this case, and the curtailment of further crimes being committed."

Because neither of these statements provided a "substantial basis" for demonstrating "a fair probability that contraband or evidence of a crime will be found in a particular place," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), no officer of reasonable competence could have thought this affidavit established probable cause to search for the items listed in the warrant, *see Malley v. Briggs*, 475 U.S. 335, 341 (1986) (in determining whether an officer is eligible for qualified immunity, "[t]he question is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant"). Therefore, I would affirm the district court's denial of qualified immunity, and I respectfully dissent.

I

Viewing the evidence in the light most favorable to the Millenders (as we must when reviewing this appeal from the denial of the officers' motion for summary judgment based on qualified immunity), no reasonably well-trained officer in Messerschmidt's position could have concluded that there was probable cause to search for the wide variety of firearms, firearm accessories, and gang paraphernalia listed in the search warrant.

Probable cause exists when an affidavit demonstrates a fair probability that each of the items sought in the search warrant is contraband or evidence of a crime. *See VonderAhe v. Howland*, 508 F.2d 364, 369 (9th Cir. 1974); *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991) (holding that "probable cause must exist to seize all the items of a particular type described in the warrant").

The affidavit must set forth specific facts that make the search reasonable. A warrant may not "rest upon mere affirmance of suspicion or belief without disclosure of supporting facts or circumstances." *Nathanson v. United States*, 290 U.S. 41, 47 (1933); *see also Gates*, 462 U.S. at 239 (citing *Nathanson* with approval and stating that a "bare-bones" affidavit comprised of mere conclusory statements is an inadequate basis for a probable cause determination); *Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637 (1968) (holding that an affidavit that merely stated the officer's belief that movies and books to be seized were obscene, and therefore illegal, was insufficient to establish probable cause). Moreover, the search warrant must be "carefully tailored to its justifications" in order to ensure that the search "will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

## II

The affidavit in this case did not allege facts making it reasonable to search for the broad array of firearms and firearm-related equipment listed in the search warrant. The affidavit established probable cause to search for a "black sawed off shotgun with a pistol grip" because it recounted Bowen's attack on Kelly with that weapon. But the affidavit did not recite any facts indicating that the broad array of other items sought (including "[a]ll handguns, rifles or shotguns of any caliber, or any firearms capable of firing ammunition or firearms or devices modified or designed to allow it to fire

ammunition") were used in, or were evidence of, the crime under investigation. *See United States v. Rubio*, 727 F.2d 786, 793 (9th Cir. 1983) (where a warrant seeks evidence relevant to proving a criminal violation, the affidavit must establish probable cause to believe there is a connection between the evidence sought and a violation of the criminal statute at issue).

The affidavit contains the conclusory statement that "the recovery of the weapon could be invaluable in the successful prosecution of the suspect involved in this case, and the curtailment of further crimes being committed." No reasonable officer could think this statement is enough to support probable cause. Mere possession of firearms is not, generally speaking, a crime, *cf. District of Columbia v. Heller*, 128 S. Ct. 2783, 2799 (2008), and a reasonable officer in Messerschmidt's position would know that the only weapon at issue in the case was the sawed-off shotgun depicted in the photograph and specifically described by Kelly, *see VonderAhe*, 508 F.2d at 370 (where "the government knew exactly what it needed and wanted" in search for particular type of record, a warrant seeking all types of records is prohibited).

Nor did the affidavit demonstrate a fair probability that the gang paraphernalia sought in the warrant was an instrumentality or evidence of the crime under investigation. The affidavit stated only that Bowen was "a known Mona Park Crip gang member." Gang paraphernalia may evidence membership in a gang, but such membership is not itself evidence of a crime, absent an allegation that the gang is wholly criminal or that there is some nexus between Bowen's criminal activity and his membership in the gang. *See Rubio*, 727 F.2d at 793; *see also Warden v. Hayden*, 387 U.S. 294, 307 (1967). The affidavit does not include such allegations. Rather, the affidavit describes the crime as a "spousal assault," and states that Kelly had decided to end her dating relationship with Bowen due to his temper, and had called the officers "to watch over her while she gathered some of her property from her resi-

dence." Nothing in these statements demonstrates a fair probability that the gang paraphernalia described in the warrant was evidence of a crime, and no reasonable officer could think otherwise.

Finally, the officers here cannot shield themselves from liability by relying on the deputy district attorney's review or the magistrate's approval of the warrant. "Our cases repeatedly emphasize th[e] distinction between warrants with disputable probable cause," where reliance on magistrate approval is reasonable, "and warrants so lacking in probable cause that no reasonable officer would view them as valid," where reliance on magistrate approval is unavailing. *KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008). This case falls into the latter category. Messerschmidt's affidavit provided "a mere affirmation of suspicion and belief without any statement of adequate supporting facts." *Nathanson*, 290 U.S. at 46. In short, the affidavit is simply missing the facts and circumstances that would support a search for the array of firearms and gang paraphernalia described in the warrant.

III

The majority reaches the contrary conclusion for several reasons. First, the majority relies on the allegations in the affidavit that Bowen used a deadly weapon and had ties with a gang. Second, the majority states that it is reasonable to infer that Bowen "probably had a criminal record," although the affidavit does not say so. Maj. Op. at 5273. Third, the majority notes that the warrant was limited to items that "arose out of the officer's particular concerns with Bowen, if not with the specific crime under investigation." Maj. Op. at 5274. In essence, the majority holds that the breadth of the warrant is justified because Bowen used a gun, was a member of a gang, and had raised the concerns of the police.

I disagree. Officers do not get a pass from complying with the Fourth Amendment's warrant requirements because they

are investigating an unsavory character. No matter how shady Bowen may be, reasonable officers would know that they cannot undertake "general, exploratory searches and indiscriminate rummaging through a person's belongings," *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986), unless there are facts in the affidavit establishing a fair probability that the items sought in the search warrant are contraband or evidence of a crime.

## IV

In sum, the affidavit contained only conclusory statements rather than concrete facts and circumstances, and failed to allege a nexus between the items sought and the criminal activity being investigated. Because it did not include facts demonstrating a fair probability that the items listed in the search warrant were evidence of the crime being investigated, "a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. The officers "cannot excuse [their] own default by pointing to the greater incompetence of the magistrate." *Id.* at 346 n.9. I would affirm the district court's denial of qualified immunity, and I respectfully dissent.